OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas, in which, appellants, Oak Real Estate, Ltd. and Convenient Food Mart, Inc., appealed the December 23, 2002 judgment entry, based on the trial court's ruling that the lease between appellee, Consolidated Investment Corporation, and appellants was effectively terminated on April 27, 2001, and that appellants' counterclaims were dismissed.
 {¶ 2} The parties entered into a lease agreement on July 27, 1978, for a 3,600 square foot building. The lease was renewed commencing on October 1, 1998, and terminating on September 30, 2003. The agreement contained a provision that stated:
 {¶ 3} "Except that if said building shall be substantially (to the extent of 35 percent or more of its insurable value) or totally destroyed during the last three (3) years of the term hereof, or during the last three (3) years of any renewal or extension hereof, either the Lessor [appellee] or the Lessee [appellants] may terminate this lease as of the date of such destruction by written notice to the other given within thirty (30) days after such destruction."
 {¶ 4} On April 3, 2001, the premises was partially destroyed by a fire to an extent that was later determined to exceed the thirty-five percent threshold contained in the lease agreement. As a result, around April 27, 2001, appellee exercised its option to terminate the lease agreement, but appellants refused to vacate the premises. Appellants disputed that the damage to the building exceeded thirty-five percent of its insurable value.
 {¶ 5} On June 22, 2001, appellee filed an action for forcible entry and detainer. However, appellants voluntarily vacated the premises. Thereafter, on October 24, 2002, appellee filed an amended complaint seeking a declaratory judgment that the lease agreement had been effectively terminated on April 27, 2001, and that from that date on the lease was of no further force or effect. On November 14, 2002, appellants filed a counterclaim asserting breach of the covenant of quiet enjoyment, tortious interference with a business relationship, abuse of process, and a declaratory judgment seeking to establish that appellants had a lease that was valid and still in full force and effect. On that same date, appellee filed a motion to bifurcate the trial to allow its declaratory judgment action to be tried to the court first, and, if necessary to be followed by a jury trial on appellants' counterclaims. Appellants opposed the motion. On December 13, 2002, appellee also filed a motion in limine seeking to preclude appellants from introducing evidence relating to appellee's motivation in exercising the termination provision contained in the lease agreement. This motion was granted.
 {¶ 6} On December 18, 2002, the trial court granted appellee's motion to bifurcate in part and held that the trial of appellee's declaratory action and appellants' request for the court to declare that the lease is valid was bifurcated for a jury trial. Appellants' other claims would be tried to a jury at a later date if necessary. Therefore, the trial court bifurcated the matter for the jury to consider the question as to insurable value and damage. The issue regarding whether the damage amount equaled or exceeded thirty-five percent was a question of law for the trial court. A jury trial took place on December 19, 2002, and concluded on December 20, 2002.
 {¶ 7} The evidence at the trial revealed that appellee had the building insured through a policy underwritten by Cincinnati Insurance Company ("CIC"). This policy provided for coverage in an amount equal to ninety percent of the building's full replacement or "insurable value," in the sum of $242,700.[1] CIC directed appellee to secure at least two written proposals for repair from the fire damage. Appellee obtained two bids: one for $180,474.28 and one for $169,501.70. Subsequently, CIC hired an outside consultant to review the bids. This consultant determined that the cost to repair the fire damage would be $162,481.70, and that the "insurable value" of the building at the time of the fire was $270,668. Appellants then hired their own expert to submit a proposal as to the cost of repairing the fire damage. Appellants' expert determined that the cost was $85,000.
 {¶ 8} Based on the foregoing, the jury concluded that the "insurable value" of the premises was $269,660, and that the amount of damage to the building as a result of the fire was $122,000. Thus, 45.2 percent of the building was damaged.[2] Hence, under the terms of the lease agreement, the building was sufficiently destroyed to allow either party to terminate the lease by written notice. The jury also determined that appellants failed on all counts of their counterclaim because: (1) there was no evidence that appellee breached the lease agreement; (2) there was no evidence that appellee intentionally procured any breach or termination of the relationship between appellants and their subtenants; (3) there was no evidence that appellee was not authorized by the process or aimed at an objective not legitimate in the use of the process; and (4) the parties were not parties to a commercial lease which expressly authorized the forfeiture upon the occurrence of the predicate condition of the substantial destruction of the building. Appellee gave appellants written notice of appellee's election to terminate the lease.
 {¶ 9} In an entry dated December 23, 2002, the trial court ruled that the actions of appellee were within the privilege and authority granted to it by the lease. As a result, the trial court ordered that the lease was effectively terminated on April 27, 2001, and that appellants' counterclaims were dismissed, which we will treat as entering judgment in favor of appellee on appellants' counterclaims. It is from that entry that appellants timely filed the instant appeal and now assign the following as error:
 {¶ 10} "[1.] The [t]rial [c]ourt erred to the prejudice of [appellants] in excluding evidence of [appellee's] motive and bad faith.
 {¶ 11} "[2.] The [t]rial [c]ourt erred to the prejudice of [appellants] in failing to consider equitable issues and the duty of good faith."
 {¶ 12} Appellants' assignments of error are interrelated and will be addressed in a consolidated manner. Under their first assignment of error, appellants argue that the trial court erred in excluding evidence of appellee's motive and bad faith. For their second assignment of error, appellants allege that the trial court erred in failing to consider equitable issues surrounding appellee's conduct and its lack of good faith.
 {¶ 13} The trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse that materially prejudices the opposing party. State v. Hymore (1967), 9 Ohio St.2d 122, 128. In the application of the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169. It is well-established that, as the trier of fact, the trial court is in the best position to observe witnesses and judge their credibility. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23;Bonjack v. Haueter (Apr. 5, 2002), 11th Dist. No. 2001-G-2342, 2002 WL 517670, at 3.
 {¶ 14} Here, the lease agreement gave appellee the right to terminate the lease if the premises were damaged to an extent of thirty-five percent or more of the insurable value. Under the terms of the agreement, appellee sent notice to appellants that it was terminating the lease, which was timely received by appellants. The only inquiry for the initial bifurcated stage of the trial was whether the fire damage was equal to or exceeded the thirty-five percent threshold. The jury heard from appellee's witnesses and appellants' witness, who submitted bids for the cost of repairing the fire damage. Appellee's witnesses offered bids of $180,474.28 and $169,501.70. CIC's outside consultant then testified that its bid was $162,481.70. Appellants' witness submitted a proposal of $85,000, for repair. After considering all of the bids, the jury concluded that the amount of the fire damage was $122,000.
 {¶ 15} Accordingly, it is our view that the trial court did not err in precluding evidence as to appellee's motivation and/or bad faith in terminating the lease and as to equitable issues and the duty of good faith. Furthermore, any error that may have occurred to exclude good faith evidence was harmless since appellants had an opportunity to cross-examine appellee's witnesses and present evidence that the bids submitted by them were inflated. Also, appellants presented their own witness to demonstrate that the bids were inflated.
 {¶ 16} For the foregoing reasons, appellants' first and second assignments of error are not well taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
Christley and O'Neill, JJ., concur.
[1] Therefore, one hundred percent of the full insurable value of the building was $269,666.
[2] That figure is determined by dividing $122,000 by $269,660.